# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:02-cr-00015 |
| v. | MEMORANDUM OPINION |
| WILLIE JOHNSON,<br>                                    *Defendant.* | JUDGE NORMAN K. MOON |

Defendant Willie Johnson is currently serving the 21st year of his 35-year prison sentence for armed bank robbery. At age 66, Johnson suffers from multiple serious medical conditions, conditions which the Centers for Disease Control has associated with higher risk for severe COVID-19 infection. Currently before the Court is Johnson's 18 U.S.C. § 3582(c)(1)(A)(i) motion for compassionate release.

The Court will grant the motion because Johnson's age and health, coupled with the heightened risk to Johnson posed by COVID-19, constitute extraordinary and compelling reasons for early termination of his custodial sentence.

## I

### Background

In January of 2003, Johnson was sentenced to 35 years of incarceration for charges arising from his armed robbery of Farmer and Merchants Bank in Afton, Virginia. Dkt. 113 (amended judgment) p. 3; Dkt. 99 (presentence investigation report) ¶ 5. The instant motion for compassionate release comes two decades into that sentence. *See* Dkt. 146. The Federal Public

Defender ("FPD") was immediately appointed upon the Court's receipt of the motion, Dkt. 138; and, after further prompting from the Court, *see* Dkt. 142, the FPD filed a supplemental brief on Johnson's behalf, Dkt. 146. The Government was directed to file a response, Dkt. 150, but missed its extended deadline, *see* Dkts. 150, 151, 152. Because the Government failed to move for a second extension of time until a week after its first extended deadline had passed, the Court declines to extend the Government's deadline again and finds that the matter is now ripe for decision.

The Bureau of Prisons website shows that Johnson is currently housed at FCI Butner Medium I, and that his current release date is March 24, 2032.

### Johnson's Proffered Reasons for Early Release

Johnson argues that extraordinary and compelling reasons for early release are presented by the combination of his age, serious medical issues, and the heightened risk to him posed by the COVID-19 pandemic. Johnson is 66 years old and has been diagnosed with Stage IV Chronic Kidney Disease, Human Immunodeficiency Virus (HIV), Diabetes Mellitus II, hypertension, and chronic pulmonary disease (COPD). Dkt. 146 p. 1; Dkt. 149 (medical records) pp. 30–31.

### II

### Statutory Requirements

Johnson brings this motion under 18 U.S.C. § 3582(c)(1)(A).[1] Informally known as the compassionate release statute, this provision is understood to "introduce compassion as a factor

---

[1] The relevant portion of the statute reads as follows.

in assessing ongoing terms of imprisonment" by "authorizing a district court to give greater

weight to an inmate's personal circumstances—when sufficiently extraordinary and

compelling—than to society's interests in the defendant's continued incarceration and the

finality of judgments." *United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

A defendant seeking early release vis-à-vis the compassionate release statute faces two

threshold barriers. First, he must afford the Bureau of Prisons the opportunity to file a motion on

his behalf. § 3582(c)(1)(A) (allowing for a defendant's motion only "after the defendant has fully

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden

---

**(c) Modification of an Imposed Term of Imprisonment.**
—The court may not modify a term of imprisonment once it has been imposed
except that—

    **(1)** in any case—

        **(A)** the court, upon motion of the Director of the Bureau of Prisons, or
upon motion of the defendant after the defendant has fully exhausted all
administrative rights to appeal a failure of the Bureau of Prisons to bring a
motion on the defendant's behalf or the lapse of 30 days from the receipt
of such a request by the warden of the defendant's facility, whichever is
earlier, may reduce the term of imprisonment (and may impose a term of
probation or supervised release with or without conditions that does not
exceed the unserved portion of the original term of imprisonment), after
considering the factors set forth in section 3553(a) to the extent that they
are applicable, if it finds that—

            **(i)** extraordinary and compelling reasons warrant such a reduction

            [. . . .]

            and that such a reduction is consistent with applicable policy
            statements issued by the Sentencing Commission.

of the defendant's facility, whichever is earlier").[2] Second, he must identify extraordinary and compelling reasons that warrant a sentence reduction. § 3582(c)(1)(A)(i).[3]

After both of these conditions are met, the district court is then authorized to consider whether, in light of the factors set forth in 18 U.S.C. § 3553(a), the defendant should be released from his sentence early. § 3582(c)(1)(A). *See also High*, 997 F.3d at 186 (clarifying that the consideration of § 3553(a) factors comes into play once a successful showing of extraordinary and compelling circumstances has been made); *United States v. Graham*, No. 21-6613, 2022 WL 1172169 *1 (4th Cir. 2022) (relating three step process).

### Johnson is Eligible for Early Release

The Court finds that Johnson has satisfied the threshold requirements for early release.

*Exhaustion*. Because the Government has not raised exhaustion, the requirement is waived and need not be addressed. *See supra* n.2. Nevertheless, the Court notes that Johnson filed a written request to the warden of his facility on December 22, 2021, and that his request was denied two weeks later. *See* Dkt. 146-4.

*Extraordinary and Compelling Circumstances*. The compassionate release statute is understood to grant broad discretion to district courts in deciding what constitutes extraordinary and compelling circumstances warranting early release. *See United States v. McCoy*, 981 F.3d

---

[2] The Fourth Circuit recently held that this exhaustion requirement is non-jurisdictional "and thus waived if it is not timely raised." *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2022).

[3] The additional statutory requirement that any reduction be consistent with the policy statements issued by the Sentencing Commission is inapplicable to a *defendant's* motion for compassionate release because the Sentencing Commission has, as of yet, only issued policy statements addressing motions filed by the Bureau of Prisons. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

271, 284 (4th Cir. 2020) (glossing statute as empowering courts "to consider *any* extraordinary and compelling reason for release that a defendant might raise") (emphasis original). Nevertheless, there are at least two guideposts relevant to Johnson's motion. First, it now appears established that, with respect to the unique medical risks presented by the COVID-19 pandemic, a defendant must show both (1) the risk of contracting the virus in prison is greater than it would be outside and (2) the inmate's preexisting medical condition increases his risk of experiencing serious or fatal complications should he become infected. *High*, 997 F.3d at 186.

Second, the Sentencing Commission's policy statement at U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 can serve as "helpful guidance." *Id*. (quoting *McCoy*, 981 F.3d at 282 n.7). *See also Hargrove*, 30 F.4th at 197. In the case of motions for compassionate release filed by the Bureau of Prisons, as opposed to motions (such as this one) filed by defendants, U.S.S.G. § 1B1.13 expounds "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." U.S.S.G. § 1B1.13 background (internal quotation marks omitted). For motions based on an inmate's medical condition alone, the policy statement articulates a high threshold: the defendant must be "suffering from a terminal illness," *id*. at application note (1)(A)(i), or some other serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," *id*. at application note (1)(A)(ii). The policy statement becomes somewhat more receptive, by contrast, when such motions are made by prisoners who are also over the age of 65 and who have already served a substantial term of imprisonment, providing that a prisoner's age constitutes an extraordinary and compelling reason for early release where he or she "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because

of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id*. at application note 1(B).

Johnson's circumstances align with the two guideposts described above. First, with respect to the minimum requirements articulated in *High*, Johnson suffers from at least four serious health conditions that the Centers for Disease Control ("CDC") associates with higher risk for severe COVID-19 infection: Chronic Kidney Disease, COPD, Diabetes, and HIV.[4] The CDC has also found that age is "the strongest risk factor for severe COVID-19 outcomes," and that people 65 years or older account for 81% of COVID-19 related deaths in the United States.[5] There is also good reason to think that Johnson would be safer outside of prison. The Bureau of Prisons website reflects that there have already been 11 inmate deaths attributed to COVID-19 at FCI Butner Medium I, and that there are currently seven active cases at the facility, which houses 720 total inmates.[6] The website also shows that Johnson's facility is currently at Level 3 Operations,[7] meaning that the medical isolation rate is greater than 7%, or that the facility vaccination rate is less than 50%, or that the community transmission rate has been greater than 100 per 100,000 over the last 7 days.[8] Regardless of which of these thresholds has been

---

[4] *See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html* (last visited July 5, 2022).

[5] *Id.*

[6] *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 23, 2022).

[7] *See FCI Butner Medium I*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/but/ (last visited July 5, 2022).

[8] *See COVID-19 Modified Operations Plan & Matrix*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited July 5, 2022).

triggered, Johnson would almost certainly be safer in isolation at his sister's home in Richmond, as set out in his release plan. *See* Dkt. 146 p. 16.

Second, Johnson falls squarely within the guidance provided by U.S.S.G. § 1B1.13: he is over 65 years old (he is 66), he has served more than 10 years in prison (he has served over 20), and he is "experiencing a serious deterioration in physical . . . health because of the aging process."

Based on Johnson's satisfaction of these guideposts, as well as the Court's own independent consideration of Johnson's age, serious deterioration in physical health, and the ongoing threat to him posed by COVID-19 while he remains at FCI Butner Medium I, the Court concludes that Johnson has identified extraordinary and compelling reasons rendering him eligible for consideration for early release.

## Section 3553(a) Factors Support Early Release

The Court also concludes that the factors set forth in 18 U.S.C. § 3553(a) support early release.

18 U.S.C. § 3553(a) specifies the factors courts are to weigh in imposing a sentence. The list of factors is preceded by a broad admonition that courts "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing, which the statute identifies as just punishment, deterrence, protection of the public, and rehabilitation. *Id*.

The factors call for, among other things, a sentence that "reflect[s] the seriousness of the offense," "promote[s] respect for the law," "provide[s] just punishment" and "afford[s] adequate deterrence to criminal conduct." § 3553(a)(2)(A). Johnson is serving time for an armed bank robbery, during the course of which he threatened to kill bystanders if they failed to cooperate

with his demands. *See* Dkt. 99 (presentence investigation report) ¶ 5. Johnson compounded his crimes and further endangered the public when, in his effort to evade police following the robbery, he and his co-conspirator drove their getaway car more than 100-miles-per-hour, jumping curbs and even crossing into an elementary school playground. *Id*. ¶ 7. All of this occurred, moreover, *after* Johnson had already recidivated, multiple times, from sentences for prior robbery convictions. *Id*. ¶¶ 26–33. *Cf.* Dkt. 122 p. 18:24–19:1 (agreeing at resentencing with original sentencing judge's estimation that Johnson's offense record "is one of the worst that has come before the Court"). Johnson's conduct undoubtedly calls for a lengthy sentence.

But other factors suggest that early release in these circumstances is not unwarranted. Section 3553(a)(1), for example, asks courts to account for "the history and characteristics of the defendant." Relatedly, courts are also to consider the need to "protect the public from further crimes of the defendant." § 3553(a)(2)(C). Four years ago, during a resentencing hearing following a successful habeas petition, this Court declined to reduce Johnson's sentence based on his age alone, remarking that "[h]is extensive history of violent robberies and other crimes have demonstrated that Johnson is a danger to society whenever he has been out of prison." Dkt. 122 p. 19:2–4. But Johnson is now four years older and in poor health. He is 20 years removed from the conduct described above, and today even the Bureau of Prisons classifies him as being at a low risk of recidivism. *See* Dkt. 146-3 p. 4. Over his two decades in prison Johnson has been cited for only four minor disciplinary infractions—none of which involved violence. Dkt. 146 p. 15. The two most serious offenses relate to his participation in a food strike and scanning his ID a second time in an effort to procure an extra meal, *id*.; neither of which suggest an ongoing threat to the general public. And, as already alluded to, Johnson has a viable release plan, as confirmed by the United States Probation Office, whereby he will live with his sister in

Richmond. *Id*. Finally, the Court finds significant that if released Johnson will be under the supervision of the Probation Office. *See* Dkt. 113 (amended judgment providing for five-year term of supervised release) p. 4.

### III

Johnson has satisfied the threshold requirements for consideration for compassionate release. Upon consideration, and in light of the factors set forth in 18 U.S.C. § 3553(a), the Court finds that early release is warranted. Accordingly, Johnson's motion, Dkts. 137, 146, will be granted. Johnson's custodial sentence will be reduced to time served plus 10 days. The Bureau of Prisons shall release Johnson within 10 days. All other terms of Johnson's sentence shall remain the same.

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this  1st  day of August 2022.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE